### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MOHAMUD ABUKAR, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 24-2316-KHV |
| ) | |
| DEBRA GUIEB, KAREN AVAKYANTS ) | |
| and JIMMY KEATON, in their individual ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

On July 19, 2024, plaintiff filed suit against Debra Guib, Karen Avakyants and Jimmy Keaton in their individual capacities as police officers of Johnson County Community College. See Verified Complaint (Doc. #1). Under 42 U.S.C. § 1983, plaintiff asserts claims for malicious prosecution and abuse of process in violation of the Fourth Amendment (Count I) and retaliatory arrest in violation of the First Amendment (Count II). See id. This matter is before the Court on Defendants' Motion To Dismiss Plaintiff's Complaint (Doc. #10) filed September 16, 2024. For reasons stated below, the Court sustains defendants' motion.

### Legal Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim

for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiff's complaint alleges as follows:

Mohamud Abukar is a Muslim male of African American descent. Previously, he was a student at Johnson County Community College ("JCCC").[1] The JCC Police Department employed

---
[1] Plaintiff does not allege the dates that he attended JCCC.

Debra Guieb, Karen Avakyants and Jimmy Keaton as campus police officers.

On August 15, 2023, plaintiff was alone on the second floor of a building on the JCCC campus, and was talking on speaker phone with a friend from Nashville, Tennessee. Guieb and Avakyants accused plaintiff of masturbating, describing that his hand was in his pants while he was looking at his phone and that he "was rubbing his genitals."[2] Complaint (Doc. #1), ¶ 15. Guieb and Avakyants reviewed video footage and claimed that the video clearly showed plaintiff with his left hand down his pants and rubbing his genitals; Guieb stated that "you can see motion indicating an up and down motion." Id., ¶ 19. Neither Guieb nor Avakyants asked to look at plaintiff's phone, his internet history or his phone log records.

Guieb and Avakyants detained plaintiff and demanded that he identify himself. Plaintiff provided his name to both officers, but Avakyants could not understand his pronunciation given plaintiff's accent. Avakyants asked plaintiff to spell his name and plaintiff did so. Avakyants then asked plaintiff to describe his car; plaintiff told them that he drove a gray Toyota Camry, which was his mother's car. Guieb began interrogating plaintiff, accusing him of masturbating and not providing them his correct name. The officers would not allow plaintiff to leave.

Guieb and Avakyants asked plaintiff for his driver's license. Plaintiff told them that he had left his license in his car. Guieb and Avakyants required plaintiff to leave the building and escorted him—one officer on each side—to his car.[3] Throughout the walk, Guieb and Avakyants continued to accuse him of masturbating. Plaintiff continued to deny the allegations, explaining that he had merely been adjusting his waist band and that his religion prohibited masturbation.

---

[2] Plaintiff does not allege what events—if any—occurred between him talking on the phone and defendants levying their accusations of masturbation against him.

[3] Plaintiff does not allege whether Guieb or Avakyants were armed at any point during these events.

When they arrived at plaintiff's car, Guieb asked, "how do we even know this is your car?" Id., ¶ 38. Plaintiff responded, "what are you talking about[?] I have the keys." Id. Guieb stated, "I didn't know Muslims were thieves." Id. Guieb demanded that plaintiff open the car, and when plaintiff began to open the driver's side door, Guieb stopped him and told him to open the car from the passenger side. Plaintiff retrieved his driver's license and handed it to Avakyants, who ran a background check on plaintiff.

At this time, plaintiff asked for a supervisor and Keaton (Guieb's Sergeant) walked out to plaintiff's car. Guieb informed plaintiff that she and Keaton would review the video recordings and determine whether plaintiff had committed a crime. Guieb instructed plaintiff to return to the JCCC Police Station the next day.

Guieb and Avakyants prepared a Kansas Standard Offense Report based on their interaction with plaintiff.[4] On their report, Guieb and Avakyants identified Avakyants herself as the "Victim," of plaintiff's conduct and left "Victim Ethnicity" on the report blank. Id., ¶ 50. They classified Avakyants' injury as "none." Id. The officers reported that plaintiff had "Hate/Bias" with a score of "99," which indicates that the "Officer believes a hate bias was involved but the type unknown." Id., ¶ 52.

The Kansas Bureau of Investigation has authored the Kansas Incident Based Reporting System Handbook, which provides mandatory guidance on completing the Kansas Standard Offense Report. The handbook states that, "due to the difficulty of ascertaining the offender's

---

[4] In support of their motion to dismiss, defendants submit a copy of the JCCC police report completed by Guieb and Avakyants. Defendants argue that because the report is central to plaintiff's claims, the Court can consider it on their motion to dismiss. Plaintiff argues that the Court should not consider the police report because he vehemently denies the facts that defendants reported. Because the Court decides defendants' motion on grounds other than those involving the veracity of the police report, the Court need not reach this issue.

subjective motivation, bias is to be reported only if investigation reveals sufficient objective facts to lead a reasonable and prudent person to conclude that the offender's actions were motivated, in whole or in part, by bias." Id., ¶ 51. According to the handbook, a bias score of "99" would "be VERY rare." Id., ¶ 55 (emphasis in original).

On August 16, 2023, plaintiff returned to the police station as requested. While there, plaintiff received a complaint and notice to appear, Complaint No. 325985, alleging (1) lewd and lascivious behavior in violation of Overland Park Municipal Code § 11.24.030(a) and (2) interfering with law enforcement (obstruct) in violation of Municipal Code § 11.20.080. As a result, plaintiff had to hire an attorney, which cost him $1,500. The Municipal Court of Overland Park, Kansas ultimately dismissed the case. Nevertheless, plaintiff is forever subjected to a public record accusing him of committing sexual acts and obstructing law enforcement.

On July 17, 2024, plaintiff filed suit against Guieb, Avakyants and Keaton in their individual capacities, claiming malicious prosecution and abuse of process in violation of the Fourth Amendment (Count I) and retaliatory arrest in violation of the First Amendment (Count II). See Complaint (Doc. #1). Plaintiff alleges that defendants improperly detained, seized, interrogated and arrested him, which commenced a judicial proceeding against him in municipal court. See id. On September 16, 2024, defendants filed their motion to dismiss plaintiff's complaint. See Motion To Dismiss (Doc. #10).

## Analysis

Under Rule 12(b)(6), defendants request that the Court dismiss plaintiff's claims under Section 1983. Specifically, defendants argue that (1) because plaintiff has not alleged that defendants subjected him to an unreasonable seizure, his malicious prosecution claim fails as a matter of law; (2) because plaintiff has not alleged that defendants used the legal process in an

"illegal, perverted or improper" manner other than to initiate a criminal proceeding against him, his abuse of process claim fails as a matter of law; and (3) because plaintiff has not alleged that he engaged in a constitutionally protected activity, his retaliatory arrest claim fails as a matter of law.[5] Defendants also argue that they are entitled to qualified immunity on each claim.

### I.      Count I – Malicious Prosecution[6]

Under Section 1983, plaintiff claims malicious prosecution in violation of the Fourth Amendment.[7] Plaintiff alleges that after improperly detaining, interrogating and falsely arresting him, defendants filed a false police report, thus initiating a judicial proceeding against him. Defendants argue that the Court should dismiss plaintiff's claim because he has not alleged an underlying constitutional violation as required for Section 1983 claims.

Section 1983 provides a federal civil cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution."[8] 42 U.S.C.

---

[5] Defendants raise several additional arguments, including that plaintiff has not alleged that defendants (1) lacked probable cause for their actions; (2) acted with malice; or (3) retaliated against him based on constitutionally protected activity. Because the Court decides defendants' motion on the above-listed grounds, it declines to address the merits of these remaining arguments.

[6] Plaintiff asserts two claims in Count I of his complaint: malicious prosecution and abuse of process. Because defendant argues different grounds of dismissal for the two claims, the Court addresses the two claims separately.

[7] The Fourth Amendment reads as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[8] In full, Section 1983 reads as follows:

(continued. . .)

§ 1983. When addressing malicious prosecution claims under Section 1983, common law elements are the starting point of the analysis, but "the ultimate question is whether plaintiff has proven the deprivation of a constitutional right." Novitsky v. City of Aurora, 491 F.3d 1244, 1258 (10th Cir. 2007). To state a claim of common law malicious prosecution, plaintiff must allege that (1) defendants caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of plaintiff; (3) no probable cause supported the original arrest, continued confinement or prosecution; (4) defendants acted with malice; and (5) plaintiff sustained damages. See Shrum v. Cooke, 60 F.4th 1304, 1310 (10th Cir. 2023).

Generally, malicious prosecution claims under Section 1983 are grounded in the Fourth Amendment right to be free from unreasonable seizure. Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007). "[T]he Fourth Amendment protects a person's liberty interests under the constitution by ensuring that any arrest or physical incarceration attendant to a criminal prosecution is reasonable." Id. at 919. Before analyzing reasonableness, however, the Court must first determine whether any arrest or physical incarceration—i.e. a seizure—occurred.

---

[8] (. . .continued)
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

A. <u>Whether Plaintiff Alleges An Actionable Seizure</u>

Violation of the Fourth Amendment requires an intentional acquisition of physical control. <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596 (1989). For purposes of a malicious prosecution claim, plaintiff must allege a seizure in the form of either an arrest or imprisonment. <u>Becker</u>, 494 F.3d at 914. An arrest constitutes a seizure only when the officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." <u>U.S. v. Mendenhall</u>, 446 U.S. 544, 552 (1980). A seizure does not necessarily include "requiring a person to post bond, compelling a person to appear in court, or imposing restrictions on a person's right to interstate travel." <u>Becker</u>, 494 F.3d at 915. Moreover, absent some significant restriction on liberty, groundless charging decisions or citations with a notice to appear in court are not Fourth Amendment seizures for purposes of malicious prosecution claims. <u>Id.</u>; <u>Leon v. Summit Cnty.</u>, 755 F. App'x 790, 796 (10th Cir. 2018); <u>see also</u> K.S.A. § 22-2202(4) (giving of notice to appear not arrest). To determine whether a particular encounter constitutes a seizure, the Court must consider all the circumstances surrounding the encounter. <u>Florida v. Bostick</u>, 501 U.S. 429, 439 (1991).

Malicious prosecution claims under the Fourth Amendment only concern detention *after* the institution of the legal process.[9] <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 489 (1994) (emphasis added); <u>see also</u> <u>Myers v. Koopman</u>, 738 F.3d 1190, 1195 (10th Cir. 2013), <u>as amended on denial of reh'g</u> (Jan. 8, 2014) (where detention occurs after institution of legal process, plaintiff can claim that legal process itself was wrongful, and state Fourth Amendment violation sufficient to support

---

[9] By contrast, unreasonable seizures imposed *without* legal process precipitate Fourth Amendment false imprisonment claims. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 389 (2007) (emphasis added) (false imprisonment claim rather than malicious prosecution where defendants did not have warrant for plaintiff's arrest).

Section 1983 malicious prosecution cause of action). The issuance of an arrest warrant is the typical example of the institution of legal process. Margheim v. Buljko, 855 F.3d 1077, 1086 (10th Cir. 2017).

Here, plaintiff does not allege that the Municipal Court ever issued an arrest warrant for him. Also, he does not allege exactly when defendants filed the police report which initiated the judicial proceeding against him. To the extent that plaintiff bases his malicious prosecution claim on the events of August 15, 2023, defendants had not yet initiated legal process against him and plaintiff therefore has not stated a claim upon which relief may be granted.

The Court therefore reviews the events of August 16, 2023, when plaintiff received the complaint and notice to appear.

Plaintiff alleges that on August 16, 2023, he voluntarily returned to the JCCC Police Station, where they served him with a complaint and notice to appear, Complaint No. 325985, alleging "Lewd and Lascivious Behavior" under Overland Park Municipal Code § 11.24.030(a) and "Interfering with Law Enforcement" under Municipal Code § 11.20.080. Complaint (Doc. #1), ¶ 46. Plaintiff alleges that "Overland Park subsequently processed another arrest and notice to appear." Id., ¶ 47.

Plaintiff alleges that defendants improperly "arrested" him but provides no factual allegations indicating that an arrest ever occurred on August 16, 2023, or that the Municipal Court ever issued an arrest warrant. Plaintiff does not allege physical force or show of authority, or that defendants restrained his liberty. Plaintiff has not alleged that defendants detained him on August 16, 2023 or that he was not free to leave the police station after receiving the complaint and notice to appear. Indeed, plaintiff does not even allege that he interacted with defendants that day. Because plaintiff's complaint utilizes passive voice—that "he was served"—the Court cannot

even ascertain with whom plaintiff interacted at the police station.  Id., ¶ 46.  A complaint and notice to appear is not equivalent to a seizure under the Fourth Amendment, even if plaintiff styles it as an "arrest."  See Martinez v. Carr, 479 F.3d 1292, (10th Cir. 2007) ("issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure") (collecting cases where other circuits found citation not seizure under Fourth Amendment).

Plaintiff has not plausibly alleged that his encounter at the JCCC Police Station on August 16, 2023 constituted a seizure under the Fourth Amendment and therefore he has failed to state a claim for malicious prosecution under Section 1983.

### B.      Whether Defendants Are Entitled To Qualified Immunity

Defendants argue that they are entitled to qualified immunity on this claim.  Government officials sued in their individual capacity are entitled to qualified immunity from suit and liability for civil damages for performing discretionary functions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Dodds v. Richardson, 614 F.3d 1185, 1191 (10th Cir. 2010).  In deciding a motion to dismiss based on qualified immunity, the Court must consider whether plaintiff has alleged facts which establish a violation of a constitutional right.  See Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011).

Here, for purposes of his malicious prosecution claim, plaintiff has not plausibly alleged that defendants seized him.  He therefore has not alleged any deprivation of a constitutional right. As a result, defendants are entitled to qualified immunity on this claim.  The Court sustains defendants' motion to dismiss plaintiff's malicious prosecution claim for failure to state a claim upon which relief may be granted and that defendants are entitled to qualified immunity on any

such claim.

## II.     Count I – Abuse Of Process

Under Section 1983, plaintiff asserts a claim for abuse of process, alleging that defendants (1) "employed the reporting and charging process as a way to show that black Muslims will be assumed to masturbate by merely adjusting their pants;" (2) misused the service process by requiring plaintiff to return to the police station; and (3) utilized the legal process to validate their own systemic biases.  Complaint (Doc. #1), ¶ 56.  Defendants argue that the Court should dismiss plaintiff's abuse of process claim because their alleged misconduct related solely to the initiation of the legal process and therefore they did not abuse the legal process.

To allege an abuse of process claim under Section 1983, plaintiff must allege (1) each element of the tort of abuse of process and (2) that the abuse of process deprived plaintiff of a constitutional right.  Becker, 494 F.3d at 914; Stegall v. Great Am. Ins. Co., 996 F. Supp. 1060, 1070 (D. Kan. 1998).   To state a claim for the tort of abuse of process, plaintiff must allege that (1) defendants made an illegal, perverted or improper use of the process; (2) defendants had an ulterior purpose or motive for exercising the illegal, perverted or improper use of the process; and (3) plaintiff suffered damage from the irregularity.  Good v. Bd. of Cnty. Comm'rs of Shawnee Cnty. Kan., 331 F. Supp. 2d 1315, 1330 (D. Kan. 2004) (citing Porter v. Stormont–Vail Hosp., 228 Kan. 64, 646, 621 P.2d 411, 416 (1980)).

Defendants argue that the Court should dismiss plaintiff's abuse of process claim because plaintiff does not allege that defendants used the citation on August 16, 2023 in an "illegal, perverted or improper" manner, but just to initiate criminal proceedings against him.  Neither party addresses whether the alleged abuse of process deprived plaintiff of a constitutional right, so the Court focuses on defendants' argument that plaintiff has not alleged the common law elements of

abuse of process.

### A. Whether Plaintiff Alleges Improper Use Of Legal Process

Abuse of process focuses on "some extortionate perversion of lawfully initiated process to illegitimate ends." Stegall, 996 F. Supp. at 1070 (citing Heck v. Humphrey, 523 U.S. 477, 486 n.5 (1994)). As noted, abuse of process exists when plaintiff has alleged "an improper act in the regular prosecution of a proceeding." Lindenman v. Umscheid, 255 Kan. 610, 621, 875 P.2d 964, 973 (1994). The mere initiation of proceedings—with or without justification—does not constitute abuse of process. Stegall, 996 F. Supp. at 1070.

Plaintiff argues that defendants (1) completed a false police report, leading to an improperly issued complaint and notice to appear, based on defendants' prejudice against black Muslim males and (2) made him return the next day—despite charges already being prepared—and police officers cannot command individuals to return to a police station to be served rather than effectuate proper service.

As to plaintiff's first assertion of abuse of process, plaintiff does not state a claim because he challenges only the police report and issuance of the complaint and notice to appear, i.e. the initiation of proceedings. See Eravi v. City of Lawrence, Kansas, No. 23-CV-4109-JAR, 2024 WL 3360447, at *4 (D. Kan. July 9, 2024) (argument that defendants intentionally issued false trespassing citation for sole purpose of singling out plaintiff fails to state claim for abuse of process). Even if defendants did not have justification to initiate legal process or initiated it based on their own prejudice, to do so does not state a claim for abuse of process.

Plaintiff's assertion that defendants forced him to return to the police station also fails, but for a different reason: plaintiff has not alleged an improper act in the prosecution of the Municipal Court proceeding. Plaintiff alleges that process had begun before he arrived at the police station,

though it is unclear exactly when defendants filed the police report, and that defendants had an ulterior motive in his prosecution. Plaintiff has failed to allege, however, an illegal, perverted or improper act. Plaintiff cites no authority, and the Court finds none, that service of process at a police station is misuse of legal process.[10] Accordingly, plaintiff has failed to plausibly allege the common law elements of abuse of process.

### B. Whether Defendants Are Entitled To Qualified Immunity

Defendants assert that they are entitled to qualified immunity because plaintiff did not allege that he suffered a violation of constitutional rights that were clearly established. As noted, neither party addresses whether plaintiff has alleged an underlying constitutional violation for this claim. Because the Court does not reach the constitutional violation analysis on this claim, it does not consider qualified immunity. Accordingly, the Court bases its decision on plaintiff's failure to plausibly allege the common law elements of abuse of process. The Court sustains defendants' motion to dismiss plaintiff's abuse of process claim for failure to state a claim.

### III. Count II – Retaliatory Arrest

Under Section 1983, plaintiff asserts a claim for retaliatory arrest in violation of his right to peaceably assemble and associate with his college under the First Amendment. Defendants argue that the Court should dismiss plaintiff's retaliatory arrest claim because he has failed to allege that he engaged in constitutionally protected activity.[11]

---

[10] The Overland Park Municipal Code states that "a municipal judge, the clerk of the municipal court, the city attorney, an assistant city attorney, a law enforcement officer or a city officer" may serve a notice to appear upon defendant by "delivering a copy to him or her personally, or by leaving it at the dwelling house of the accused person or usual place of abode with some person of suitable age and discretion then residing therein, or by mailing it to the last known address of said person." Overland Park, Kan. Mun. Code § 2.33.380 (2008), https://online.encodeplus.com/regs/overlandpark-ks/.

[11] The First Amendment reads as follows:

(continued...)

To allege a First Amendment retaliation claim, plaintiff must plead facts showing that: (1) he engaged in activity the First Amendment protects; (2) defendants' actions injured him in a way that would "chill a person of ordinary firmness from continuing to engage in that activity;" and (3) his protected activity substantially motivated defendants' responsive actions. Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1165 (10th Cir. 2009). When plaintiff bases his retaliation claim on a false arrest, plaintiff must also make a separate showing of a false arrest, i.e. that defendants lacked probable cause for the arrest. Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners, 962 F.3d 1204, 1227 (10th Cir. 2020) (citing Nieves v. Bartlett, 587 U.S. 391, 402 (2019)). The Court need not consider whether defendants lacked probable cause, however, because plaintiff has not alleged that he was engaged in a constitutionally protected activity at the time of his purported arrest.

A.   Whether Plaintiff Alleges Constitutionally Protected Activity[12]

Plaintiff argues that on August 15, 2023, he was engaging in his First Amendment right to peaceably assemble and associate with his college.

The First Amendment protects the "right of the people peaceably to assemble." U.S. Const.

---

[11] (. . .continued)
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.

[12]   At various times, plaintiff's complaint asserts that defendants deprived him of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. At other times, plaintiff asserts that defendants violated only his First, Fourth and Fourteenth Amendment rights. The Court has already addressed plaintiff's claims under the Fourth Amendment: malicious prosecution and abuse of process. For purposes of this claim, plaintiff asserts only rights under the First Amendment—freedom of assembly and freedom of association. The Court will not speculate as to what claims plaintiff supposedly brings under the Fifth, Eighth and Fourteenth Amendments, to the extent he even does so.

amend. I.  "The right of assembly is the right to physically hold and attend meetings, marches, pickets, demonstrations, parades, and the like."  Van Deelen v. Johnson, 535 F. Supp. 2d 1227, 1233 (D. Kan. 2008) (citing Hague v. Committee for Indus. Org., 307 U.S. 496, 512 (1939)).  The right to assemble "is a collective or group right, rather than the right of a single individual."  Boyd v. City of Victoria, Kansas, No. 16-4106-SAC, 2017 WL 3581737, at *12 (D. Kan. Aug. 18, 2017); see also D.C. v. Heller, 554 U.S. 570, 645 (2008) (Stevens, J. dissenting) ("While the right peaceably to assemble protects the individual rights of those persons participating in the assembly, its concern is with action engaged in by members of a group, rather than any single individual.").

The First Amendment also protects an individual's right to expressive association.  Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984).  Specifically, it protects the associational and assembly rights of individuals to (1) enter into and maintain certain intimate or private relationships without unjustified government interference and (2) associate to engage in protected speech, religious activities or expressive conduct.  Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 544 (1987).

Defendants argue that plaintiff has not alleged that he engaged in constitutionally protected activity under the First Amendment.  Specifically, defendants assert that merely entering and being physically present on a college campus does not constitute protected activity; otherwise any person on a college campus would be continuously engaged in protected activity at all times.

Plaintiff has not alleged that on August 15, 2023, he was engaged in the right of assembly or association.  Plaintiff alleges that on August 15, 2023, he was alone on campus.  Based on this fact, he has not plausibly alleged that he was engaging in the "collective or group right" to "physically hold and attend meetings, marches, pickets, demonstrations, parades, and the like," or that he was engaging in an intimate or expressive association on campus.  Van Deelen, 535 F.

Supp. 2d at 1233.  For these reasons, plaintiff has not plausibly alleged that on August 15, 2023, he engaged in constitutionally protected activity under the First Amendment.  Plaintiff has therefore failed to state a claim of retaliatory arrest under Section 1983.

B.  Whether Defendants Are Entitled to Qualified Immunity

Because plaintiff has not alleged that defendants violated his constitutional rights, defendants are entitled to qualified immunity on this claim.  The Court therefore sustains defendants' motion to dismiss plaintiff's retaliatory arrest claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss Plaintiff's Complaint (Doc. #10) filed September 16, 2024 is **SUSTAINED.**

Dated this 5th day of November, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge